**FILED**

JUN 0 6 20..

DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY _____ TC
DEP. CLERK

| | |
|---|---|
| GINGER E. HUBER, | ) |
| | ) |
|   Plaintiffs, | ) |
| | ) |
|      v. | )    **PETITION FOR REMOVAL** |
| | )    **OF CIVIL ACTION 01 CVS 5345** |
| NORTH CAROLINA STATE UNIVERSITY; | ) |
| RALPH HARPER, Director of Public Safety, | ) |
| NORTH CAROLINA STATE UNIVERSITY; | ) |
| JEFF MANN, Associate Vice Chancellor for | ) |
| Business, NORTH CAROLINA STATE | ) |
| UNIVERSITY; GEORGE L. WORSLEY, Vice | ) |
| Chancellor of Finance & Business, NORTH | ) |
| CAROLINA STATE UNIVERSITY; DAVE | ) |
| RAINER, Associate Vice Chancellor for | ) |
| Environmental Health and Public Safety, | ) |
| NORTH CAROLINA STATE UNIVERSITY, | ) |
| | ) |
|   Defendants. | ) |
| | ) |

**TO:**   **The United States District Court for**
       **the Eastern District of North Carolina, Western Division**

Pursuant to 28 U.S.C. §§ 1441(a) and (b), Defendants Jeff Mann, George

Worsley, Dave Rainer, and N.C. State University[1] petition for removal of Civil Action 01

---

[1] Defendant Ralph Harper is not represented by undersigned counsel, but is represented by Assistant Attorney General William McBlief of the Correction Section of the Criminal Division of the N.C. Department of Justice. On information and belief, defendant Harper has not yet been served with summons in this matter. Defendants Mann, Worsley, Rainer and N.C. State University are represented by Special Deputy Attorney General Thomas J. Ziko and Assistant Attorneys General Sylvia Thibaut and Thomas O. Lawton III of the Education Section of the Special Litigation Division of the N.C. Department of Justice.

CVS 5345 from the Superior Court of North Carolina, Wake County, to this Honorable Court. In support of the petition, these Defendants show the Court the following:

1.  On or about 3 May 2001 Plaintiff filed in the North Carolina Superior Court of Wake County a civil action against Defendants.

2.  Defendant Mann was served 11 May 2001. Defendant NCSU and Worsley were served 8 May 2001. Defendant Rainer was served 9 May 2001. Thus, this petition is timely. 28 U.S.C. § 1446(b) (thirty days after receipt of pleading).

3.  The Complaint purports to allege four causes of action, two of which arise under federal law. See Complt. ¶¶ 72-75 (alleging violation of 18 U.S.C. § 2511 and 2520), 76-79 (alleging violation of Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983).

4.  Because Plaintiff purports to bring claims "arising under the [] laws . . . of the United States," this Court has original jurisdiction over those claims. 28 U.S.C. § 1331.

5.  Because those claims are within this Court's original jurisdiction, these Defendants may remove the action to this Court. 28 U.S.C. §§ 1441(a) & (b).

6.  Copies of all process and pleadings in possession of these Defendants' counsel are attached to this petition, as Exhibit A. Defendants are also filing, in this Court and in the Superior Court of North Carolina, Wake County, formal notice of this petition for removal, as required by 28 U.S.C. § 1446(d), and are causing a complete copy of the state court file to be filed in this Court.

2

WHEREFORE, these Defendants ask that Civil Action 01 CVS 5345 be removed from the Superior Court of North Carolina, Wake County, to the United States District Court for the Eastern District of North Carolina, Western Division.

Respectfully submitted this _____ day of June 2001.

ROY COOPER
Attorney General

Thomas J. Ziko
Special Deputy Attorney General
N.C. Bar No. 8577

Sylvia Thibaut
Assistant Attorney General
N.C. Bar No. 10070

Thomas O. Lawton III
Assistant Attorney General
N.C. Bar No. 19690

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
(919) 716-6920
fax (919) 716-6764

3

## CERTIFICATE OF SERVICE

I certify that the foregoing **PETITION FOR REMOVAL OF CIVIL ACTION 01**

**CVS 5345** was served on counsel for plaintiff and on counsel for defendant Harper by

depositing copies in the United States mail, first-class postage prepaid, addressed to:

Jonathan D. Sasser　　　　　　　　Martha A. Geer
Reed J. Hollander　　　　　　　　　PATTERSON, HARKAVY & LAWRENCE
MOORE & VAN ALLEN, PLLC　　　P. O. Box 27927
P. O. Box 26507　　　　　　　　　　Raleigh, N.C. 27611
Raleigh, N.C. 27611　　　　　　　　Counsel for Plaintiff
Counsel for Plaintiff

William McBlief
Assistant Attorney General
N.C. Dep't of Justice
P. O. Box 629
Raleigh, N.C. 27602
Counsel for defendant Harper

This ＿6＿ day of June 2001.

Thomas O. Lawton III
Assistant Attorney General

4

# STATE OF NORTH CAROLINA

Wake County

**VIA CERTIFIED MAIL**

File No. 01 CVS 5345

Film No.

In The General Court of Justice

☐ District Court Division ☒ Superior Court Division

| Plaintiff | |
|---|---|
| GINGER E. HUBER | **CIVIL SUMMONS** |
| | GS 1A-1, Rules 3, 4 |

**VERSUS**

\* ☐ Alias and Pluries Summons
The summons originally issued against you was returned not served.

| Defendant | | |
|---|---|---|
| NORTH CAROLINA STATE UNIVERSITY; RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY; JEFF MANN, ASSOCIATE VICE CHANCELLOR FOR BUSINESS, NORTH CAROLINA STATE UNIVERSITY; GEORGE L. WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH CAROLINA STATE UNIVERSITY; DAVE RAINER, ASSOCIATE VICE CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY | Date Last Summons Issued | \*Disregard this section unless the block is checked |

TO: NORTH CAROLINA STATE UNIVERSITY

TO:

| Name & Address of First Defendant | Name & Address of Second Defendant |
|---|---|
| NORTH CAROLINA STATE UNIVERSITY c/o MARY ELIZABETH KURZ, VICE CHANCELLOR AND GENERAL COUNSEL Office of Legal Affairs, North Carolina State University 305 Holladay Hall, Box 7008 Raleigh, NC 27695 | RECEIVED MAY 0 8 2001 LEGAL AFFAIRS NCSU |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to him or by mailing it to him at his last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney If none, Address of Plaintiff | Date Issued | Time Issued |
|---|---|---|
| Jonathan D. Sasser Moore & Van Allen, PLLC P.O. Box 26507 Raleigh, NC 27611 919-821-6200 | 5-4-01 | 12:00  ☐ AM ☒ PM |
| | Signature  BY | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk of Superior Court |

☐ ENDORSEMENT
This summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days.

ACC-CV-100
Rev. 3/83

| Date of Endorsement | Time |
|---|---|
| | ☐ AM ☐ PM |
| Signature | |
| ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk of... | **EXHIBIT A** |

STATE OF NORTH CAROLINA

Wake County

**VIA CERTIFIED MAIL**

File No. O1 CVS S345

Film No.

In The General Court of Justice

☐ District Court Division ☒ Superior Court Division

Plaintiff
GINGER E. HUBER

**CIVIL SUMMONS**

GS 1A-1, Rules 3, 4

**VERSUS**

\* ☐ Alias and Pluries Summons
The summons originally issued against you was returned not served.

Defendant
NORTH CAROLINA STATE UNIVERSITY; RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY; JEFF MANN, ASSOCIATE VICE CHANCELLOR FOR BUSINESS, NORTH CAROLINA STATE UNIVERSITY; GEORGE L. WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH CAROLINA STATE UNIVERSITY; DAVE RAINER, ASSOCIATE VICE CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY

| Date Last Summons Issued | \*Disregard this section unless the block is checked |
|---|---|

TO: GEORGE L. WORSLEY, VICE CHANCELLOR
OF FINANCE & BUSINESS, NORTH CAROLINA
STATE UNIVERSITY

TO:

Name & Address of First Defendant
GEORGE L. WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH CAROLINA STATE UNIVERSITY
Campus Box 7201, Room B, Holladay Hall
Raleigh, NC 27695-7201

Name & Address of Second Defendant

**A Civil Action Has Been Commenced Against You!**
You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to him or by mailing it to him at his last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney None, Address of Plaintiff | Date Issued | Time Issued |
|---|---|---|
| Jonathan D. Sasser Moore & Van Allen, PLLC P.O. Box 26507 Raleigh, NC 27611 919-821-6200 | 5-4-01 | 12:00 ☐ AM ☒ PM |
| | Signature | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

☐ **ENDORSEMENT**
This summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days.

CC-CV-100
./. 3/83

| Date of Endorsement | Time |
|---|---|
| | ☐ AM ☐ PM |
| Signature | |
| ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

# STATE OF NORTH CAROLINA

Wake County

**VIA CERTIFIED MAIL**

File No. 01 CVS 5345

Film No.

In The General Court of Justice

☐ District Court Division ☒ Superior Court Division

Plaintiff
GINGER E. HUBER

# CIVIL SUMMONS

GS 1A-1, Rules 3, 4

## VERSUS

\* ☐ Alias and Pluries Summons

The summons originally issued against you was returned not served.

Defendant
NORTH CAROLINA STATE UNIVERSITY; RALPH HARPER,
DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE
UNIVERSITY; JEFF MANN, ASSOCIATE VICE CHANCELLOR FOR
BUSINESS, NORTH CAROLINA STATE UNIVERSITY; GEORGE L.
WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH
CAROLINA STATE UNIVERSITY; DAVE RAINER, ASSOCIATE VICE
CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC
SAFETY, NORTH CAROLINA STATE UNIVERSITY

| Date Last Summons Issued | *Disregard this section unless the block is checked |
|---|---|

| TO: RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY | TO: |
|---|---|
| Name & Address of First Defendant<br>RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY<br>6008 Brass Lantern Court<br>Raleigh, NC 27606 | Name & Address of Second Defendant |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to him or by mailing it to him at his last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney<br>If none, Address of Plaintiff<br>Jonathan D. Sasser<br>Moore & Van Allen, PLLC<br>P.O. Box 26507<br>Raleigh, NC 27611<br>919-821-6200 | Date Issued<br>5-4-01 | Time Issued<br>12:00 ☐ AM ☒ PM |
|---|---|---|
| | Signature<br>BY | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT<br>This summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days. | | |
|---|---|---|
| AOC-CV-100<br>Rev. 3/83 | Date of Endorsement | Time<br>☐ AM ☐ PM |
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

File No. **OI CVS 5345**

Film No.

In The General Court of Justice

☐ District Court Division  ☒ Superior Court Division

Plaintiff

GINGER E. HUBER

# CIVIL SUMMONS

GS 1A-1, Rules 3, 4

**VERSUS**

\* ☐ Alias and Pluries Summons
The summons originally issued against you was returned not served.

Defendant

NORTH CAROLINA STATE UNIVERSITY; RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY; JEFF MANN, ASSOCIATE VICE CHANCELLOR FOR BUSINESS, NORTH CAROLINA STATE UNIVERSITY; GEORGE L. WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH CAROLINA STATE UNIVERSITY; DAVE RAINER, ASSOCIATE VICE CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY

| Date Last Summons Issued | *Disregard this section unless the block is checked |
|---|---|

TO:   DAVE RAINER, ASSOCIATE VICE CHANCELLOR
FOR ENVIRONMENTAL HEALTH AND PUBLIC
SAFETY, NORTH CAROLINA STATE UNIVERSITY

TO:

Name & Address of First Defendant

DAVE RAINER, ASSOCIATE VICE CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY
8625 Kings Arms Way
Raleigh, NC 27615

Name & Address of Second Defendant

**A Civil Action Has Been Commenced Against You!**
You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or his attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to him or by mailing it to him at his last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name and Address of Plaintiff's Attorney if none, Address of Plaintiff | Date Issued | Time Issued |
|---|---|---|
| Jonathan D. Sasser
Moore & Van Allen, PLLC
P.O. Box 26507
Raleigh, NC 27611
919-821-6200 | 5-3-07  Signature  BJ | 12:00  ☐ AM ☒ PM |

☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court

☐ **ENDORSEMENT**
This summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this summons must be served is extended thirty (30) days.

AOC-CV-100
Rev. 3/83

| Date of Endorsement | Time |
|---|---|
| | ☐ AM ☐ PM |
| Signature | |

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk of Superior Court

**Moore&VanAllen**

Moore & Van Allen PLLC

Suite 1700
One Hannover Square
Post Office Box 26507
Raleigh, NC 27611-6507

Dave Rainer, Associate Vice Chancellor for
Environmental Health & Public Safety,
NCSU
8625 Kings Arms Way
Raleigh, NC 27615

Name _____
1st Notice _____
2nd Notice _____
Return _____

7000 1670 0012 0315 4773

NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
_____ CVS _____

GINGER E. HUBER, )
)
    Plaintiff, )
)
v. )
)
NORTH CAROLINA STATE )
UNIVERSITY; RALPH HARPER, )
DIRECTOR OF PUBLIC SAFETY, )
NORTH CAROLINA STATE )
UNIVERSITY; JEFF MANN, )
ASSOCIATE VICE CHANCELLOR FOR )
BUSINESS, NORTH CAROLINA STATE )
UNIVERSITY; GEORGE L. WORSLEY, )
VICE CHANCELLOR OF FINANCE & )
BUSINESS, NORTH CAROLINA STATE )
UNIVERSITY; DAVE RAINER, )
ASSOCIATE VICE CHANCELLOR FOR )
ENVIRONMENTAL HEALTH AND )
PUBLIC SAFETY, NORTH CAROLINA )
STATE UNIVERSITY, )
)
    Defendants. )

COMPLAINT

(JURY TRIAL DEMANDED)

BY _____ WAKE COUNTY, C.S.C. 2001 MAY -3 PM 12: 00 FILED

    1.    This is an action to recover damages for a university's surreptitious taping of its

employee's telephone conversations. The illegal surveillance was merely one of the methods by

which the institution's police chief dominated and controlled his employees for the purposes,

among others, of preventing public knowledge of his department's misuse of funds. Upon

information and belief, high levels of North Carolina State University's administration were

aware of its Public Safety Department's improper activities even as they were taking place. In

any event, after learning of the misconduct, the NCSU officials ratified the misdeeds and took

extraordinary measures to cover them up.

Case 5:01-cv-00420-BO    Document 1    Filed 06/06/01    Page 10 of 26

2.     Immediately after the *News & Observer* publicized some of the wrongdoing,

NCSU's top officials ordered that the evidence of illegal purchases be collected and removed

from the Public Safety Department. As investigators from the Office of the North Carolina State

Auditor and the North Carolina State Bureau of Investigation prepared to visit the premises,

university employees were ordered to haul evidence away. For example, NCSU ripped its

surveillance cameras from the Public Safety building before the SBI arrived, and diverted most

of the "James Bond" gadgets to the school's Purchasing Department for dispersal throughout the

campus or simply for destruction.

3.     Despite their legal obligations to preserve evidence, and in the face of direct

written notice of their responsibilities, NCSU officials continued to obstruct investigations:

a.     Even as investigators from the State Auditor's Office were poring over

records at the Public Safety Department, the university recorded the investigators'

telephone conversations with their superiors on Salisbury Street.

b.     The university destroyed a voice-altering device, described in the State

Auditor's Report as a questionable expenditure.

c.     A surveillance briefcase was not turned over to the SBI for several

months, and would also have been destroyed had its disappearance not been noted by Ms.

Huber, and the matter reported in the newspaper.

## PARTIES

4.     Ginger E. Huber is a resident of Franklin County, North Carolina.

5.     At all times relevant to this proceeding, Ms. Huber was an employee of North

Carolina State University, working in the Department of Public Safety.

6.     North Carolina State University ("NCSU") is a North Carolina public university with its principal place of business in Raleigh, Wake County, North Carolina.

7.     Ralph Harper was, at all times relevant to this proceeding, Director of the Department of Public Safety at NCSU.

8.     Jeff Mann was, at all times relevant to this proceeding, Associate Vice Chancellor for Business at NCSU.

9.     Upon information and belief, among Mr. Mann's responsibilities as Associate Vice Chancellor for Business at NCSU was the hiring of the Director of Public Safety for NCSU and oversight of the operations and activities of the Department of Public Safety.

10.    George L. Worsley was, at all times relevant to this proceeding, Vice Chancellor of Finance and Business at NCSU.

11.    Upon information and belief, among Mr. Worsley's responsibilities as Vice Chancellor of Finance and Business at NCSU was oversight of the operations and activities of the NCSU Department of Public Safety.

12.    David Rainer was, at times relevant to this proceeding, Associate Vice Chancellor of Environmental Health and Public Safety at NCSU.

13.    Upon information and belief, among Mr. Rainer's responsibilities as Associate Vice Chancellor at NCSU was oversight of the operations and activities of the NCSU Department of Public Safety.

14.    At all times relevant, Defendants Harper, Mann, Worsely, and Rainer were acting under color of statutes, regulations, customs, practices, and usages of NCSU and pursuant to their authority as employees and agents of NCSU.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4 and 42 U.S.C. §§ 1983 and 1988.

16.     Venue is proper in this Court pursuant to N.C. Gen. Stat. §1-77 and §1-82.

## FACTS

### The Symbiotic Relationship Between Ralph Harper and Jeff Mann

17.     NCSU hired Jeff Mann as an associate vice chancellor in February 1989.

18.     Jeff Mann hired Ralph Harper as Director of the NCSU Department of Public Safety in August 1989.

19.     Upon information and belief, prior to August 1989, Mr. Harper and Mr. Mann were friends and fellow employees at Winthrop University in Rock Hill, South Carolina.

20.     Upon information and belief, Mr. Mann hired Mr. Harper without a background investigation. Upon information and belief, Mr. Harper was not among the first group of finalists recommended to Mr. Mann by a NCSU search committee, but he was offered the job ahead of the more qualified candidates based on his prior relationship with Mr. Mann.

21.     This close connection between Mr. Harper and Mr. Mann was well known to employees of the NCSU Department of Public Safety.

22.     Throughout their joint tenure at NCSU, Mr. Mann regularly bailed Mr. Harper out of trouble. Whenever a student, faculty member, Public Safety Department employee, or Raleigh resident complained of Mr. Harper's activities, Mr. Mann was assigned to investigate. Inevitably, the matter would be resolved in Mr. Harper's favor. Mr. Harper would then exact retribution against the complainant.

## The Situation Ms. Huber Walked Into at the NCSU Public Safety Department

23.     On October 13, 1997, Ms. Huber began her first day of employment as the Director's Assistant with the NCSU Department of Public Safety.

24.     In her capacity as Director's Assistant, Ms. Huber reported directly to Ralph Harper. Her job responsibilities included organizing and managing the daily responsibilities for the Director of Public Safety, researching and assembling information for various projects, drafting and editing reports and correspondence for NCSU officials, maintaining law enforcement officer records, and serving as the Public Safety Department liaison with Criminal Justice Training and Standards Division.

25.     At all times during her employment with NCSU Department of Public Safety, Ms. Huber had a reasonable expectation of privacy in her telephone conversations and while sitting at her desk.

26.     When she began her job, little did Ms. Huber suspect that one of Mr. Harper's goals while Director of the Department of Public Safety was to woo as many female employees of the Department as possible. In order to facilitate these attempts, Mr. Harper moved many of the female employees of his administrative staff to his end of the second floor of the Public Safety building, while exiling his Assistant Director, Terry Wright, to the opposite end of the building. Mr. Harper was thus surrounded, at all times, by half a dozen young women.

27.     Mr. Harper promoted female employees to positions for which they were unqualified, in order to add to the number of female employees working around him.

28.     Mr. Harper attempted to gain the affection and loyalty of female employees by giving them equipment purchased with NCSU funds.

29.     Mr. Harper wrote love poetry to his female employees, which he would have them read as he sat and watched. He also sent his female employees email messages professing his love and/or affection for them.

30.     Mr. Harper discouraged male officers from coming up onto the second floor of the Public Safety building in order to shield his female employees from them.

31.     Mr. Harper's efforts to develop the affection and devotion of female employees was widely known among the Public Safety Department, with the female employees sometimes referred to as "Harper's Harem."

32.     Mr. Harper instituted a pattern and practice of taping his employees phone calls to determine whether they were reporting his improper or inappropriate activities, including but not limited to:

        (a)     spending department funds on equipment and items for his personal use;

        (b)     unauthorized uses of department computer systems;

        (c)     taking trips and vacations paid for by NCSU, ostensibly for educational purposes, which were instead for pleasure;

        (d)     drinking alcoholic beverages prior to or while driving his university-owned truck;

        (e)     inappropriate personal relationships with female subordinates;

        (f)     terminating, demoting, or transferring certain employees who interfered with or had information about his illegal or unauthorized practices.

33.     Mr. Harper used the information gained from his illegal eavesdropping to manipulate, control, and dominate the employees of his Department. By way of example, and not by way of limitation, upon information and belief Mr. Harper would:

(a)     transfer or hold up promotions for employees who had criticized his decisions;

(b)     seek retribution for employees who questioned his authority; and

(c)     transfer, terminate, and force the resignations of employees who became aware of, or interfered with, his attempts to seduce the women in his employ.

34.     Upon information and belief, Mr. Harper and NCSU developed a reputation in the local law enforcement community for "sandbagging" employees who left the NCSU Department of Public Safety. During Mr. Harper's tenure, other law enforcement agencies generally disregarded NCSU's comments, recommendations, or criticisms of its former Public Safety employees when considering whether to hire those former employees because they knew of Mr. Harper's retaliatory practices.

## The Taping of Ms. Huber's Phone Conversations

35.     On or about October 13, 1997, Ms. Huber was given a departmental orientation. During this orientation, she was never informed that any telephone lines in the Public Safety offices were recorded. Ms. Huber was never given a copy of any memoranda or policies regarding recorded telephone lines, nor was she asked to sign any document acknowledging that her telephone lines were to be recorded.

36.     In December 1997, Ms. Huber learned, from fellow Public Safety employees, of the existence of a Digital Audio Tape ("DAT") recorder in the offices of Public Safety. She learned that Mr. Harper had used the DAT recorder to tape record and listen to Officer Greg Franklin's personal phone calls.

37.     After learning about the DAT recorder, Ms. Huber questioned Mr. Harper regarding the ethics and legality of listening to Mr. Franklin's personal phone calls. Mr. Harper

told her that he was entitled to listen to Mr. Franklin's personal phone calls because Mr. Franklin was the subject of an internal investigation.

38.     During her conversation with Mr. Harper in December 1997 regarding the DAT recorder, Ms. Huber specifically and directly asked Mr. Harper if her calls were being recorded. Mr. Harper expressly assured her that her telephone lines were not recorded, as he routinely used her telephone in the evenings and did not want his own conversations recorded. He further stated that he and Ms. Huber might have conversations regarding personnel issues that he did not wish to be recorded. He also told Ms. Huber that Assistant Director Terry Wright's lines were not recorded because they were used to discuss personnel issues.

39.     In March 1998, Mr. Harper had Ms. Huber's office relocated from the opposite end of the building to Mr. Harper's suite. Ms. Huber noticed that there was a surveillance camera in her office. When she asked Mr. Harper about the camera, Mr. Harper told her that it was video only, and was there for security reasons.

40.     During Ms. Huber's employment with NCSU, Mr. Harper repeatedly reassured her that her telephone lines were not being recorded.

41.     On more than one occasion, Mr. Harper explained to Ms. Huber that the only way her line could be recorded was if the NCSU Telecommunications Department physically wired her line to the DAT recorder. He stated that the wiring for her number (515-5878) had never been connected to the DAT recorder and that it was, therefore, "impossible" for her line to be recorded. He also became teary-eyed, and told Ms. Huber that it hurt him when she questioned his integrity.

42. On at least two separate occasions after March 1998, Mr. Harper physically took Ms. Huber into the DAT recorder room to show her that her telephone number (515-5878) was not being recorded.

43. In November 1998, Mr. Harper issued a departmental Standard Operating Procedure entitled "Downloading Telephone Calls and Radio Transmissions from the DAT Recorder." Prior to this SOP, there had been no procedure in place to preserve the confidentiality or to list reasons for downloading a conversation from the DAT recorder. The SOP stated that the only personnel granted access to the DAT recorder were the computer support technician and the telecommunications center supervisor. Mr. Harper officially designated Martha Windham to be in charge of the DAT recorder (i.e., maintenance, retrieve calls for legitimate purposes, etc.).

44. In May 1999, Mr. Harper had a company called Audio Data Systems, Inc. install software on his office computer which enabled him to listen to other employees' telephone calls while in progress, as well as previously recorded calls on the DAT recorder. Mr. Harper did not notify Ms. Huber or the other employees of the Department that he had purchased and was using such a software program.

45. In September 1999, Ms. Huber left work on a Friday evening, but returned to the office because she had left something at her desk. When she reached the top of the stairs in Public Safety, she noticed that the door to the DAT recorder room were open although it was customarily secured by Ms. Windham before she left work at the end of the day. Ms. Huber overheard what she believed to be her own voice coming out of the DAT recorder room. Ms. Huber walked into the DAT recorder room, and saw Peggy Earo, an employee who was not authorized under the SOP to download calls from the DAT, sitting with her back to the door. Ms. Earo was listening to one of Ms. Huber's calls. Ms. Earo did not notice that Ms. Huber was

behind her. Ms. Huber was so stunned and upset that she walked out without revealing her presence to Ms. Earo.

46. Shortly thereafter, Ms. Huber confronted Mr. Harper in the parking lot and told him that Ms. Earo was listening to her calls. Ms. Huber asked why Ms. Earo was in the DAT recorder room since she was not supposed to have access. Mr. Harper told Ms. Huber he had asked Ms. Earo to pull a tape regarding a complaint against an employee. He said: "Go home, and stop being so paranoid."

47. A week or so later, the room to the DAT recorder was open and Ms. Windham was not in her office. Ms. Huber lifted her own phone off its hook, went to the DAT recorder room, and determined that her office telephone line was being recorded under a fictitious, or blind, number (515-2160). She reported her discovery to Ms. Windham and another employee.

48. Believing now that her phone calls had been recorded surreptitiously, Ms. Huber became very upset and confronted Mr. Harper about the recording of her line under a blind number. He told her she was wrong, and was just being "paranoid." However, Ms. Windham later confirmed to Mr. Harper that Ms. Huber's line was indeed hidden under a blind number. Mr. Harper's next tactic was to blame Ms. Earo. He told Ms. Huber that if Ms. Earo had connected Ms. Huber's telephone to the DAT recorder, he would terminate Ms. Earo.

49. Mr. Harper instructed Ms. Windham to change the passwords to the DAT recorder granting access only to Ms. Windham and himself. Ms. Windham did so and gave the passwords to Mr. Harper. The next morning when Ms. Windham returned to work, she needed to perform maintenance on the DAT recorder and could not access it because the passwords had been changed yet again. When she questioned Mr. Harper about it, he referred her to Ms. Earo.

50.     This same day, Mr. Harper instructed Ms. Huber not to discuss with Ms. Earo the matter of Ms. Earo's listening to DAT recorder tapes. He mentioned that he would have Lt. Tamher Jackson perform an internal investigation. He also said he would contact the DAT recorder vendor to find out how "such a thing could have happened."

51.     A few days later, Ms. Huber asked how his investigation was progressing. He told her he had contacted the DAT recorder vendor. According to Mr. Harper, the vendor told him that the recorder attached her line by itself.

52.     In January 2000, Brandi Pate, another employee, alerted Ms. Huber that she had information that both of their telephone lines were being recorded. Ms. Huber went to Mr. Harper and asked if this information was correct. He became very upset and teary-eyed, and called both Ms. Pate and Ms. Huber into his office. He said that their lines were not supposed to be recorded, and that he believed Ms. Earo had put their lines on without his knowledge. He said, "I hope you girls don't believe that I would do that to you."

53.     In February 2000, Mr. Harper demonstrated the Audio Data Systems, Inc. software program to Ms. Huber using her personal phone calls. He implied to Ms. Huber how easy it was for him to access and download her phone calls. He also assured her, however, that he had given Ms. Windham instructions to remove Ms. Pate's and Ms. Huber's lines from the DAT recorder.

54.     Ms. Huber did not know her line was still being recorded until June 2000 when Ms. Windham discovered Ms. Huber's telephone line hidden under the designation "Channel 44" on the DAT recorder.

## Mr. Harper's Efforts to Cover-Up Unlawful Activities

55.     In May 2000, Dan Kane from the *News & Observer* began investigating Mr. Harper's spending practices.

56.     On the evening of May 31, 2000, Mr. Harper returned to Public Safety, after being out of the office for a few days. He began removing surveillance equipment previously located only in his office and redistributing it through the Public Safety Department. Prior to that night, the Public Safety's Investigations division had no knowledge of this equipment. One investigator said it "looked like Christmastime" when he came into the office and discovered the box.

57.     The office in which Mr. Harper had stored his recording and surveillance equipment was not accessible by any employee other than Mr. Harper. Upon information and belief, none of that equipment was ever used by any NCSU Department of Public Safety officer or investigator for any legitimate law enforcement or investigations purpose.

58.     On June 1, 2000, Mr. Harper went out on sick leave.

59.     On June 18, 2000, the *News and Observer* published Mr. Kane's front-page article headlined "Unspent Salaries Used For High-Tech Equipment for NCSU Police" and a second article titled "Trainees Spent Work Time Touring, Ex-Worker Says." Both articles mentioned that there was a practice of surreptitiously recording telephone conversations of department employees.

60.     On June 20, 2000, Mr. Harper gave Ms. Huber a magnet that he had purchased, and asked her to erase all the DAT recorder tapes. He gave Ms. Huber the code to disarm the alarm to the DAT room and instructed her to enter the room when a certain officer worked the night shift. If the telecommunications center noticed the alarm down, this officer would be the

one to respond and Mr. Harper believed that Ms. Huber could "talk her way out of it" with him. Mr. Harper told Ms. Huber to "throw the magnet in the river," regardless of whether she erased the tapes. He warned her that he would deny any knowledge of the conversation if she ever told anyone.

61.     Ms. Huber did not erase the tapes, nor did she enter the DAT recorder room. She instead placed the magnet in one of the cabinets in the Public Safety Department.

**The Efforts of Jeff Mann, George Worsley, David Rainer to Cover-Up Unlawful Activities**

62.     On June 19, 2000, the day after the newspaper story, Jeff Mann and George Worsley ordered that the improper purchases mentioned in the newspaper article be removed from the Public Safety building. Trucks were backed up to the building, and the gadgets loaded aboard for dispersion across the NCSU campus. Some of the equipment was sent to the University purchasing department to be destroyed. Among the items destroyed by the University was a voice-changing device used in conjunction with telephone calls.

63.     Upon information and belief, Mr. Harper was scheduled to retire on December 31, 2000. However, shortly after the extent of the problems in the NCSU Department of Public Safety was revealed in the *News and Observer*, the University, through Jeff Mann and George Worsley, sent word to Mr. Harper that he should retire much sooner, by June 30, 2000.

64.     Before the State Auditors or representatives of the State Bureau of Investigation could visit the Department of Public Safety, George Worsley and Dave Rainer ordered that virtually all of the electronic surveillance equipment (except for the cameras themselves) be stripped out of the Department of Public Safety building. Before the S.B.I. agents could visit, Dave Rainer expressly directed that the cameras be removed.

65. Upon dismantling the surveillance cameras, which were always purported to be for video recording only, it was discovered that the cameras recorded both video and audio. Therefore, people having conversations within range of one of the eight cameras in the Department, including Ms. Huber, would have been audio recorded without their knowledge.

66. At no time was Ms. Huber informed by any official with the Department of Public Safety or with NCSU that her telephone line was being recorded, that it could be recorded, or that anyone had authorization to record her line.

67. At no time did Ms. Huber give oral or written permission, authority, or consent to any NCSU employee or official to record her telephone calls.

68. Defendants Mann, Worsley, and Rainer encouraged, ratified, or knowingly acquiesced in the actions of Defendant Harper, and did so both individually and in pursuance of a common plan or design.

69. Defendants not only recorded Ms. Huber, but also made unlawful recordings of telephone calls of other NCSU employees and citizens making telephone calls to those employees. Such violations of employees' and citizens' rights have occurred in the past and will likely continue to occur in the future.

70. Defendants' actions have chilled expressive activity and will have an ongoing deterrent effect.

71. Defendants, at all relevant times, acted wantonly and maliciously and in knowing or reckless disregard of Plaintiff's rights.

## FIRST CLAIM FOR RELIEF AGAINST
## DEFENDANTS NCSU AND HARPER

72.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71.

73.     Defendants intercepted, disclosed, or intentionally used Plaintiff's wire and oral communications in violation of 18 U.S.C. §§ 2511 and 2520.

74.     Defendants knew or reasonably should have known, in light of all the circumstances, that their actions would violate Plaintiff's clearly established federally protected rights.

75.     As a direct result of Defendants' actions, Plaintiff has sustained actual damages or, alternatively, is entitled to recover statutory damages under 18 U.S.C. §2520(c)(2).

## SECOND CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS

76.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 75.

77.     The acts of Defendants, executed under color of state law, were calculated to and did violate Plaintiff's rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

78.     Defendants knew or reasonably should have known, in light of all the circumstances, that their actions would violate Plaintiff's clearly established federally protected rights.

79.     As a result of Defendants' actions, Plaintiff has sustained actual damages.

## THIRD CLAIM FOR RELIEF
## AGAINST DEFENDANT HARPER

80.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

79.

81.     Defendant Harper willfully intercepted, disclosed, used, or procured other persons

to intercept, disclose, or use Ms. Huber's wire and oral communications in violation of N.C. Gen.

Stat. §§ 15A-287, -296.

82.     As a direct result of Defendant Harper's actions, Plaintiff has sustained actual

damages or, alternatively, is entitled to recover statutory damages under N.C. Gen. Stat. § 15A-

296(a).

## FOURTH CLAIM FOR RELIEF
## AGAINST DEFENDANT HARPER
## IN HIS OFFICIAL CAPACITY

83.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through

82.

84.     Defendant Harper's actions constituted a violation of Ms. Huber's rights under

Art. I, §§ 19 and 20 of the North Carolina Constitution.

85.     Defendant Harper is liable in his official capacity for violation of Ms. Huber's

constitutional rights.

86.     As a direct result of Defendant Harper's actions, Plaintiff has sustained actual

damages.

WHEREFORE, Plaintiff respectfully prays:

1.     That the Court declare that Defendants' actions were in violation of 18 U.S.C. §§

2511 and 2520, N.C. Gen. Stat. §§ 15A-287, -296, the Fourth Amendment of the United States

Constitution, and Art. I, §§ 19 and 20 of the North Carolina Constitution;

2.     That the Court permanently enjoin Defendants from engaging in or continuing any and all practices found by this Court to be unlawful and unconstitutional;

3.     That Plaintiff recover from the Defendants compensatory damages;

4.     That Plaintiff recover from Defendants punitive damages;

5.     That the costs of this action, including a reasonable attorneys' fee, be taxed to Defendants;

6.     That Plaintiff be granted a jury on all issues triable to a jury; and

7.     That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

This the 3rd day of May, 2001.

MOORE & VAN ALLEN PLLC

Jonathan D. Sasser
State Bar No. 10028
Reed J. Hollander
State Bar No. 23405
One Hannover Square, Suite 1700
Raleigh, North Carolina 27601
Telephone: (919) 821-6200
Facsimile: (919) 835-6500

PATTERSON, HARKAVY & LAWRENCE

Martha A. Geer
State Bar No. 13972
Post Office Box 27927
Raleigh, North Carolina 27611
Telephone: (919) 755-1816
Facsimile: (919) 755-0124
*Attorneys for Plaintiff Ginger Huber*